# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **SPEECH FIRST, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil No. 4:18-cv-11451-LVP-EAS |
| v. | ) Hon. Linda V. Parker |
| | ) Mag. Judge Elizabeth A. Stafford |
| **MARK SCHLISSEL,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## DECLARATION OF KEVIN T. BAINE

I, Kevin T. Baine, submit this declaration in connection with the above-captioned matter and in support of Defendants' opposition to Plaintiff's motion for a preliminary injunction.

1. I am an attorney at the law firm Williams & Connolly LLP and counsel for all Defendants.

2. Exhibit 1 to this Declaration is a true and accurate copy of the University of Michigan's policy on Freedom of Speech and Artistic Expression that was downloaded as a PDF file from its website at approximately 12:30 p.m. EDT on June 13, 2018.

3. Exhibit 2 is a true and accurate copy of an article from the *Michigan Daily* entitled "University Responds to Lawsuit Regarding Bias Response Team," published

on May 27, 2018, downloaded as a PDF file from the *Michigan Daily* website at approximately 12:30 p.m. EDT on June 13, 2018.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   June 14, 2018

_____
Kevin T. Baine

# EXHIBIT 1




# Standard Practice Guide Policies

## Freedom of Speech and Artistic Expression          601.01

**Applies to:**

Recent events at the University of Michigan and elsewhere emphasize the pressing need for members of the University community--including administrators, faculty, staff, and students--to reaffirm formally their deep commitment to freedom of speech and artistic expression and to clarify the implications of that commitment. Freedom of speech in this context will be taken to encompass all forms of communication and artistic expression as well as the freedom to listen, watch, protest, or otherwise participate in such communication. It is hoped that this reaffirmation will win the support, in spirit and in letter, of people representing the entire spectrum of opinion of the University community in order to create a truly open forum, one which diverse opinions can be expressed and heard.

Expression of diverse points of view is of the highest importance, not only for those who espouse a cause or position and then defend it, but also for those who hear and pass judgment on that defense. The belief that an opinion is pernicious, false, or in any other way detestable cannot be grounds for its suppression.

When a speech or some form of artistic expression such as a play or concert is prevented by disruptive protest from taking place or concluding, the effect is just as surely an attack on freedom of speech or artistic expression as the deliberate suppression or prohibition of a speaker or artist by authorities. At the same time, however, the rights of free expression enjoyed by speakers or performers do not negate the rights of free expression of those who would protest the speech or performance.

The guidelines that follow concern how most fully to protect rights of free expression for speakers, performers, and protesters alike. They apply to settings in which an audience has been assembled for a talk or performance, or in which a talk or performance takes place in a public setting at the University, but do not apply to the classroom. They are not general guidelines concerning freedom of expression among individuals or in other University settings where protest might occur. Moreover, they do not cover acts of physical violence, or verbal harassment or threat directed at individuals in which there is no intent to communicate publicly or with a wider audience. Nor do these guidelines in any way restrict the application of civil or criminal law. Finally, these are not guidelines concerning appropriate or civil conduct at speeches or artistic performances. Rude or offensive behavior, though inconsistent with the standards of civility that we hope would prevail on a university campus, sometimes falls within the legitimate exercise of freedom of speech and, when it does, may not be suppressed.

These guidelines apply to members of the University community (students, faculty, staff, and administrators) and to their invited guests. By following these guidelines we seek to maintain at the University an environment in which the free exchange of opinions can flourish, where the learning that such exchange makes possible can occur. We welcome members of the broader public to participate in this free exchange, and we expect those who do to observe the limits of mutual tolerance embodied in these guidelines.

With these qualifications in mind, the Civil Liberties Board of the Senate Assembly recommends to the University community endorsement and adoption of the following guidelines pertaining to freedom of speech and artistic expression.

Guidelines

1. It is the right of members of the University community (including students, faculty, staff, and administrators), speakers, artists, and others invited by members of the University community to set forth their views and opinions at the University.

2. Within its lawful authority to do so, the University will protect the right of any member of the University community, or any invited speaker or artist, to speak or perform, and also will protect the rights of those members of the University community who wish to hear and communicate with an invited speaker or artist.

3. It is the responsibility of University officials or the organizers of an event to make a judgment when there is a clear and present danger that the rights of free expression and communication of a member of the University community, invited speaker, or invited artist will be infringed upon, and to take appropriate measures, consistent with these Guidelines, to safeguard these rights.

4. It is inconsistent with full respect for freedom of speech and expression--though itself a form of protected speech--for members of the University community to exert pressure to revoke an invitation for a speaker to appear at the University because of the potential for a violent reaction to the speech, or the threat of disruption of the speech, and such pressure should be resisted. Likewise, refusal to invite an individual to speak solely because his or her presence may invite violence and disruption contrary to the intellectual ideals of the University.

5. Within the confines of a hall or physical facility, or in the vicinity of the place in which a member of the University community, invited speaker, or invited artist is addressing an assembled audience, protesters must not interfere unduly with communication between a speaker or artist and members of the audience. This prohibition against undue interference does not include suppression of the usual range of human reactions commonly displayed by an audience during heated discussions of controversial topics. Nor does this prohibition include various expressions of protest, including heckling and the display of signs (without sticks or poles), so long as such activities are consistent with the continuation of a speech or performance and the communication of its content to the audience.

6. Protesters have rights, just as do speakers and artists. The standard of "undue interference" must not be invoked lightly, merely to avoid brief interruptions, or to remove distractions or embarrassment. The University has an obligation to provide members of the community, and invited speakers and artists, with personal security and with reasonable platforms for expression; moreover, it has an obligation to insure audience access to public events. The University does not, however, have the obligation to insure audience passivity. The University cannot accept stipulations by invited speakers or artists of terms of appearance that are inconsistent with allowing full freedom of expression to the University community. Protesters and other members of the University community, for their part, have an obligation not to abuse their rights of expression to harass or intimidate speakers in ways that unduly interfere with free expression or communication (see Guideline 5). It is, of course, always within the rights of protesters to express their opposition to a speaker in appropriate ways outside of the hall or physical facility or area where a lecture, meeting, or performance is being held, or to organize alternative forums.

7. Speakers are encouraged to exchange ideas with members of the audience and to engage in dialogue so that points of contention can be addressed directly. It is the responsibility of all parties that such dialogue not become a means of interfering unduly with free expression and communication, as understood in Guidelines 5 and 6.

8. If any of the parties within the confines of the hall or physical facility interfere unduly with freedom of expression or communication, the organizers of the event or University representative must, if possible, put such parties on notice that they are interfering unduly with such rights. If the notified parties do not stop their undue interference, the organizers or University representative should proceed with those measures deemed necessary to stop it, which may include the physical removal of individuals from the area. Canceling, stopping an event, adjourning to another time or place, or allowing protracted interruption of a speech, meeting, or performance is inconsistent with full respect for the rights of free expression and communication of those present. The overriding goal of the organizers or University representative during a disruption should be to reestablish with deliberate speed an atmosphere conducive to communication between the speaker or artist and the audience, and to full respect for the rights of all parties.

9. Because freedom of speech and expression play such a critical role in the functioning of a university, undue interference with the exercise of these freedoms by members of the University community may constitute grounds for resort to law or other formal action. Any University procedures for formal action must be even-handed in their application to all parties--whether organizer, protester, or audience member, or administrator, staff, faculty, or student--and must provide full due process and equal standing to bring a complaint.

10. It is the responsibility of all members of the University community and their guests to observe and facilitate these Guidelines. Any institutional procedures for enforcement other than resort to law fall within the jurisdiction of the Regents Bylaws.

11. Officers of the University's Department of Public Safety will act in accordance with the procedures outlined in this document. When non-University security forces are summoned, it is understood that they are not under the direct control of the University, but they should be made aware of University policies set forth in these guidelines.

12. The University should provide appropriate platforms for free speech and artistic expression. Whenever areas surrounding a public event are cordoned off for security purposes, this must not be done in such a way as to remove the possible location of any protest so far from the center of action that the protest is thereby rendered totally ineffectual. Organizers of the event or University representatives should make clear in advance which areas have been cordoned off, and for what purpose.

13. Whenever possible, lines of communication between those sponsoring or managing an event and those considering protesting the event should be arranged and maintained during the event.

**File Attachments**
Printable PDF of SPG 601.01 (http://spg.umich.edu/sites/default/files/601X01.PDF)

| | |
|---|---|
| **SPG Number:** | **Owner:** |
| 601.01 | Office of the President |
| **Date Issued:** | **Primary Contact:** |
| July 31, 1988 | Office of the President |
| **Last Updated:** | |
| April 30, 1993 | |

**Hard copies of this document are considered uncontrolled. If you have a printed version, please refer to the University SPG website (spg.umich.edu) for the official, most recent version.**

© 2018 The Regents of the University of Michigan

# EXHIBIT 2

# University responds to lawsuit regarding Bias Response Team

Sunday, May 27, 2018 - 8:50pm



. Buy this photo (http://store.pub.umich.edu/michigan-daily-buy-this-photo/)

Katelyn Mulchay/Daily

RACHEL CUNNINGHAM (/AUTHOR/CUNNINGR)
Summer Daily News Editor

Amid a federal lawsuit (https://www.michigandaily.com/section/news-briefs/university-sued-over-constitutionality-bias-response-team) filed by the organization Speech First (https://speechfirst.org/) against the University of Michigan's Bias Response Team (https://deanofstudents.umich.edu/bias-incidents), the University has responded, claiming the lawsuit has mischaracterized University policies and programs.

Speech First, a group composed of students, alumni and citizen free speech advocates, is suing the University, claiming the University has violated the right to free speech given in the U.S. Constitution.

When asked for comment on the lawsuit, University spokesman Rick Fitzgerald referred to a statement (http://record.umich.edu/articles/u-m-seeks-address-mistaken-premises-speech-related-lawsuit) released on behalf of the University in the University Record.

"In Wednesday's court filing, the University argues that the lawsuit has mischaracterized university policies and programs and 'how they have been applied and has painted a picture of the university that does not reflect the true vibrancy of debate and discussion on campus,'" the statement reads.

The statement goes on to explain the policies and programs reaffirm free speech a core principle at the University.

"The University's Standard Practice Guide reaffirms the university's commitment to free speech," the statement reads. "It states, in part, that 'expression of diverse points of view is of the highest importance, not only for those who espouse a cause or position and then defend it, but also for those who hear and pass judgment on that defense. The belief that an opinion is pernicious, false, or in any other way detestable cannot be grounds for its suppression. Freedom of speech is a bedrock principle at U-M. Commitment to this principle is reflected in the history, the policies, and the practices of the university. Students, faculty and staff regularly hear and meet a wide range of speakers who bring diverse viewpoints and perspectives to the Ann Arbor campus.'"

Speech First President Nicole Neily hopes the case will be decided based on its merits. Based on the First and 14th Amendments, the group's case says the Bias Response Team's work is too broad, too vague and constitutes prior restraint (https://www.law.cornell.edu/wex/prior_restraint).

"This is a proactive lawsuit," Neily said. "It's not that any one of our students had a seminal incident where the school (did) something to them. It's that they've been discouraged from acting or speaking at all because of how the policies are worded. They don't know what they can be in trouble for and they feel that they can be in trouble at any time."

According to the Bias Response Team's website, a bias incident is defined as conduct that discriminates, stereotypes, excludes, harasses or harms anyone based on their identity. The incident log (https://deanofstudents.umich.edu/bias-incident-report-log) documents over 150 reports within the last year.

While this is the first federal lawsuit the University has faced regarding the Bias Response Team, the University has had its speech code and freedom of speech on campus called into question on numerous occasions. Previously, students have voiced displeasure with the Michigan Political Union's decision to debate Black Lives Matter as harmful to racial relations. A 1989 case, Doe v. University of Michigan (http://www.bc.edu/bc_org/avp/cas/comm/free_speech/doe.html), also determined that the University's hate speech rules at the time violated the constitutional right to free speech.

According to the Foundation for Individual Rights in Education (https://www.thefire.org/schools/university-of-michigan-ann-arbor/), which Speech First uses for reference, the University's Ann Arbor campus has a "red light," the worst tier ranking on the website, specifically for the Expect Respect (https://expectrespect.umich.edu/) and the Standard Practice Policy for Sexual Harassment (http://spg.umich.edu/policy/201.89-0). FIRE's "red light" warning is given to universities when there is at least one policy that "both clearly and substantially restricts freedom of speech."

LSA sophomore Betsaida Valdivia worked with the Bias Response Team when she filed a report with the team in March. Valdivia is a member of La Casa, the Latinx student body on campus. She saw a picture of a student in blackface mocking (https://www.michigandaily.com/section/campus-life/student-posts-

blackface-snapchat-mocking-blacklivesmatter-0) #BlackLivesMatter on Snapchat circlulating a member group chat, and was motivated to report the incident. The team followed up with Valdivia in a consultation regarding the incident while the group investigated.

Valdivia believes students should be able to speak on things outside of their comfort zones, but a line should be drawn between what is acceptable and what is hate speech should be drawn.

"I understand that students should be able to go beyond their comfort zone … however, there's a difference between going out of your comfort zone and going beyond a safe space," Valdivia said. "Remember, with a safe space, you may converse with people who think similar things than you do but probably in different ways … they cannot allow for hate speech or allow for things that hurt different groups of people."

Ultimately, Neily explained Speech First is seeking policy reform.

"I don't think that this is a bad-faith effort," Neily said. "I don't think there was any one administrator or President Schlissel that has gone in to say 'let's stomp on student's speech rights'. I think these are just well-intentioned policies that weren't well written. I'm presuming good faith on the part of Michigan's administrators. I do hope we will be able to come to a solution."

## MORE LIKE THIS

University sued over constitutionality of Bias Response Team (/section/news-briefs/university-sued-over-constitutionality-bias-response-team)

Richard Spencer's team loses lawyer, may affect 'U' negotiations (/section/administration/alt-right-lawyer-resigns-universitys-negotiations-richard-spencer)

Diversity summit attempts productive conversations on climate (/section/administration/diversity-summit-attempts-productive-conversations-climate)

**2 Comments**

Sort by Oldest



Add a comment...



**Graham Wellington**

Michigan needs to follow the University of Chicago's lead and stop allowing these disruptive ingrate clowns in.

Like · Reply · 1w



**Daniel John Rice**

As an attorney I can say the University has no chance in hell of winning this case. I don't know what the legal department was thinking when they gave the greenlight on the Bias Response Team program.

Like · Reply ·    1 · 1w

Facebook Comments Plugin

## MOST READ

1. To the white men who told me that they "prefer" white women (/section/mic/white-men-who-told-me-they-%E2%80%9Cprefer%E2%80%9D-white-women)

2. Faking 21: How bouncers catch fake IDs and underage students get past the rope (/news/faking-21)

3. Beilein to stay in Ann Arbor following contract extension (/section/mens-basketball/beilein-stay-ann-arbor-following-contract-extention)

4. Ian Harris: 'The Last Jedi' and the state of film criticism (/section/arts/ian-harris-last-jedi-and-state-film-criticism)

5. Emma Chang: Confessions of a closeted Rosshole (/section/columns/emma-chang-confessions-closeted-rosshole)

subscribe to our daily newsletter, the Daily Digest (https://mail.michigandaily.com/lists/?p=subscribe&id=4)

About (/about)    Contact us (/contact)    Advertise (/advertise)    Subscribe (https://mail.michigandaily.com/lists/?p=subscribe&id=4)

Join the staff (/join-us)    Merchandise    View Print Issue

6/13/2018 Case 4:18-cv-11451-LVP-EAS ECF No. 18-2 filed 06/15/18 PageID.394 Page 13 of 13
University responds to lawsuit regarding Bias Response Team | The Michigan Daily

(http://store.michigandaily.com)  (http://issuu.com/michigandaily/)


(https://www.facebook.com/michigandaily/)


(https://twitter.com/michigandaily)


(https://www.instagram.com/michigandaily/)


(https://www.youtube.com/user/michdailymultimedia)

## The Michigan Daily

420 Maynard St, Ann Arbor, MI 48109 (http://maps.google.com/?q=420 Maynard St, Ann Arbor, MI 48109)
734-418-4115

Edited and managed by the students at the University of Michigan since 1890.

Copyright © 1998-2018, all rights reserved.

https://www.michigandaily.com/section/administration/university-responds-lawsuit-regarding-bias-response-team 6/6